G. E. HAWK v. THE PINE LUMBER COMPANY.

(Filed 5 November, 1908).

Plaintiff's Appeal.

1. **Contracts, Breach of—Measure of Damages—From What Time Estimated.**

    Parties to a contract are presumed to have contracted with reference to the damages which would arise from a breach thereof under the conditions existing at the time of the breach.

2. **Same—Evidence—Matters in Diminution of.**

    When a party to a contract thereby agreed to log the lands of the other party at a certain price, and was prevented from fulfilling his agreement by the breach thereof of the other, evidence of the subsequently increased price of labor, for the purpose of showing a diminution in the profits of logging during the period of time required to fulfill the contract, is incompetent, and a charge to the jury based upon that theory is erroneous.

3. **Appeal and Error—Supreme Court—Discretion—New Trial as to All Issues.**

    When error is found on appeal as to some of the issues submitted in the lower court, the Supreme Court may, in its discretion, grant a new trial as to all, when it appears that injustice would otherwise be done to one or both of the parties litigant.

ACTION tried before *Lyon, J.,* and a jury, November Term, 1907, of CRAVEN.

The plaintiff alleged that, on 4 January, 1902, he had entered into a contract with the defendant to log certain timber lands owned by it, the defendant to furnish the necessary equipment, to provide for the means for performing the contract, which were to be charged to the plaintiff, who was credited each month with the logs delivered by him. Statements were furnished each month showing the balance due. The plaintiff further alleged that the land was well timbered and the contract, if performed, would have enabled him to realize a profit of $100,000. There were allegations as to the respective duties and obligations of the parties, and

evidence to sustain the same. The essential facts are stated in *Hawk v. Lumber Co.,* 145 N. C., 58.

The contract was, of course, unperformed at the time of the breach, and the evidence tended to show that it would have taken several years to complete the work under it. The breach occurred in November, 1903. The estimates as to the quantity of timber on the land varied considerably, the plaintiff's evidence tending to show that there were between 150,000,000 and 200,000,000 feet of timber and 20,000 acres of land, while the evidence of the defendant tended to show that there were only 5,000 acres and from 30,000,000 to 40,000,000 feet of timber.

The Court permitted a witness, Benjamin Moore, over the objection of the plaintiff, made in apt time, to testify as follows: That "it would not have cost less than $4.50 or $5, at least, to log the land in 1904, 1905, 1906 and 1907, and that wages had increased since 1903 something like 50 per cent." Other witnesses were permitted to testify to the same facts. The plaintiff requested the Court to charge the jury as follows: "If the jury shall find that the defendant wrongfully broke its contract with the plaintiff, he is entitled to have his damages assessed upon the conditions as they existed at the time of the breach, and they will not consider whether the expense of logging has increased since that time, or decreased, but will estimate his damages upon the conditions then existing, and the estimate should be based upon the present value of the contract at the time of the breach." This instruction was refused and the plaintiff excepted. The Court charged the jury as follows: "1. The sixth issue is, what damage has the plaintiff sustained by reason of the wrongful breach of the contract? The burden of this issue is on the plaintiff. Should you answer the first, second and third issues 'Yes,' the plaintiff will be entitled to recover the difference between the contract price, which is agreed was three dollars per thousand feet, and the cost of cutting, hauling and loading the logs

on the cars of the Norfolk & Southern Railway Company at Croatan, of all the merchantable timber that was left on the land at the date the plaintiff stopped work for the defendant company." Plaintiff excepted to this part of the charge.

"2. You must find the quantity of timber on the land that was embraced in the contract, the number of feet and the amount that it would cost the plaintiff to deliver said logs on board the cars of the Norfolk & Southern Railway Company at Croatan, at the time or times said logs were to be delivered, under the terms of the contract. Should you find that it would cost three dollars per thousand feet or more, the plaintiff would not be entitled to recover any amount on account of said logs, for there would be no profit in it to him." The plaintiff excepted to each of these instructions.

The issues and the answers thereto were as follows:

1. Did plaintiff and defendant enter into the contract as alleged in the complaint? Answer: Yes.

2. Did the plaintiff perform the contract on his part as fully as he was permitted to do by defendant? Answer: Yes.

3. Did the defendant wrongfully break the contract and prevent the plaintiff from further performance thereof? Answer: Yes.

4. Did the defendant wrongfully convert the personal property of the plaintiff as alleged in the complaint? Answer: Yes.

5. What damage has plaintiff sustained by the wrongful conversion of his personal property? Answer: $1,359.

6. What damage has plaintiff sustained by the wrongful breach of the contract? Answer: $2,250 with interest on same.

7. Have the matters and things complained of been heretofore adjudicated as to the conversion of the personal property, as alleged in the answer? Answer: Yes.

8. Have the matters and things alleged in the complaint, other than the conversion of the personal property, been here-

tofore adjudicated, as alleged in the answer? Answer: No.

The plaintiff moved for a new trial, which was refused, and judgment was entered upon the verdict. He then excepted and appealed.

*W. D. McIver* and *D. L. Ward* for plaintiff.

*W. W. Clark, Simmons, Ward & Allen* and *Moore & Dunn* for defendant.

WALKER, J. We are of the opinion the Judge erred in admitting the testimony of Benjamin Moore and other witnesses as to facts supervening the breach of the contract, that is, the cost of logging after the breach and the increase in the rate of wages, and also in refusing the plaintiff's prayer for instruction. This case, in respect to the damages recoverable for the breach of the contract is governed by *Wilkinson v. Dunbar* (decided at this term). We held there that, while the entire damage must be assessed, present and prospective, the measure of damages is the value of the contract at the time of the breach. Justice Hoke, for the Court, says in that case: "There was evidence offered tending to show that this contract would have required some years in its performance beyond the time when a breach was established, and, as to this prospective damage, that to arise in the time required for performance after such breach, the correct rule would be the present value of the difference between the contract price and the cost of performance. We hold, as stated, that recovery for this prospective damage can be had, but defendant is only entitled to the present value of his contract, and, in so far as such damage is allowed by anticipation, proper allowance should be made for the fact that present recovery is had for damage that would only have accrued at a future time. This position as to the correct rule for determining values to arise and accrue in the future, when a present recovery is allowable, is very well illustrated in the case of *Pickett v. R. R.,* 117 N. C., 616." He cites the leading and authoritative case

of *Masterton v. Mayor,* 7 Hill, 61, in which it was held: "(a) When one party to an executory contract puts an end to it by refusing to fulfill, the other party is entitled to an equivalent in damages for the gains and profits which he would have realized from performance.

"(b) The measure of damages, in respect to so much of the contract as remained wholly unperformed at the time of the breach, is the difference between what the performance would have cost the plaintiff and the price which the defendant had agreed to pay.

"(c) In estimating what the performance would have cost the plaintiff, the Court and jury should be governed by the price of labor and material at the time of the breach, paying no attention to subsequent fluctuations of the market." This, of course, means actual fluctuations.

The language of Chief Justice Nelson (afterwards a Justice of the Supreme Court of the United States) is especially applicable to our case. He says: "Where the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on that day of the breach is to govern in the assessment of damages. In other words, the damages are to be settled and ascertained according to the existing state of the market at the time the cause of action arose, and not at the time fixed for full performance. The basis upon which to estimate the damages, therefore, is just as fixed and easily ascertained in cases like the present, as in actions predicated upon a failure to perform at the day."

The concurring opinion of *Bronson, J.,* is equally as strong and explicit in stating the same principle. The rule, as now formulated by this Court, and governing in such cases as this one, is well supported, not only by *Masterton v. Mayor, supra,* but by the other cases which will be found in the learned and forceful opinion of *Justice Hoke.* We need not refer to them *seriatim* and make special comment upon the reasons assigned

therein for the conclusion reached by the Courts of Alabama, Iowa, Wisconsin and Illinois, and by this Court in *Oldham v. Kerchner,* 79 N. C., 106, as it will suffice to say, generally, that they fully and conclusively sustain the rule as one both simple in its application, certainly less speculative than any other, and eminently just and proper. We again commend its wisdom, as it fixes a sure standard for assessing the damages, and prevents a jury from entering into the field of uncontrolled conjecture and speculation, which might result in many cases most disastrously to the offending party. He surely should not complain of it, and his adversary has no ground for criticism of it, as a proper criterion of what he should receive, as he gets, under it, all that he could have contemplated that he would receive, and he also receives a benefit from the fact that we exclude from the consideration of the jury vague surmise and conjecture as to what the future market, with respect to the cost of labor and material, and other elements of damages, will actually be. The fact that the market will fluctuate and that prices will rise or fall may be considered in estimating the damages, but not any particular or actual damage which may have occurred in future conditions. The presumption is that he estimated his profit upon the basis of the conditions existing at the time of the breach, if there should be one, or that is, at least, as close an approximation as we can possibly make, with reference to what was in the minds of the parties and within their reasonable expectation, when they made the contract. This ruling entitles the plaintiff to a new trial. The instructions of the Court, Nos. 1 and 2, would seem to be somewhat inconsistent, though it is possible we may be mistaken as to this, and not clearly understand them with reference to each other, so as to be able to reconcile them. The last instruction was erroneous, under the rule laid down by us, especially when considered in connection with the incompetent evidence admitted and the instruction asked by the plaintiff, which was rejected.

We think that, under the peculiar circumstances of this case, the new trial, which we award, should extend to all the issues, for the reason, among others which are controlling, that the facts of the case may be more fully developed and the questions intended to be presented, more clearly presented. To do otherwise might result in injustice to one or both of the parties. We grant the new trial generally in the exercise of the discretion which belongs to this Court, as has been so often decided. *Burton v. R. R.,* 84 N. C., 192; *Holmes v. Godwin,* 71 N. C., 306; *Meroney v. McIntyre,* 82 N. C., 103; *Strother v. R. R.,* 123 N. C., 197; *Hall v. Hall,* 131 N. C., 185; *Benton v. Collins,* 125 N. C., 83; *Nathan v. R. R.,* 118 N. C., 1066.

Let there be a new trial as to all the issues.

New trial.