**Tony COX, Appellant–Plaintiff,**

v.

**TOWN OF ROME CITY,**
**Appellee–Defendant.**

**No. 57A04–0109–CV–395.**

Court of Appeals of Indiana.

Feb. 26, 2002.

---

Chris K. Starkey, Zionsville, IN, Attorney for Appellant.

Karen Tallian, Eberhard & Gastineau, Portage, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Tony Cox appeals the trial court's grant of summary judgment in favor of the Town of Rome City ("Rome City"). He presents several issues for our review, which we renumber and restate as:

(1) whether his demand for relief is properly controlled by an employment contract or by statutory authority;

(2) whether the trial court erred in denying his request for relief from a 1995 suspension;

(3) whether the trial court erred in denying his claim for unpaid wages, penalties, and attorney's fees; and

(4) whether the trial court erred in denying his claim for continuation of health insurance.

We affirm in part and reverse in part.

From a review of the designated evidence contained in the appendices,[1] it appears that Cox served as Town Marshal of Rome City for several years. At least for a portion of the time of his employment, Cox and Rome City entered into a "Town Marshal Employment Agreement" which controlled the compensation, duties, and disciplinary procedures involved in Cox's service as Town Marshal. During his employment, Cox was disciplined at least three times for various violations, ranging from failure to attend meetings to improper use of a police vehicle. From March 9 through 11, 1998, Cox attended training at the Indiana Law Enforcement Academy. He rode to and from the Academy with officers from the Albion police department in an Albion squad car. From March 23 through 25, 1998, he attended a second training session at the Academy. Following both of these trips, he submitted a mileage claim form to Clara Crozier, Town Clerk–Treasurer, in which he claimed that he had driven to the Academy. It was the understanding of Ms. Crozier that Cox also did not drive to the second training session, but that he once again rode with someone else.

The Town Council took disciplinary action against Cox for falsifying the mileage claim forms, and he was suspended with pay April 13, 1998. A hearing was held on May 6, 1998, in which Cox was to be given the opportunity to be heard regarding his suspension. However, neither Cox nor his attorney attended the hearing. At that hearing, the Town Council voted in favor of accepting an Agreement to Terminate Employment which the Town Council stated that Cox agreed to before the meeting so long as certain conditions were met. The Town Council's decision allowed Cox to keep his insurance until his wife delivered their baby. Cox's final paycheck, which was for his remaining pay through May 6 minus a deduction for June insurance, was mailed to Cox after a Town Council meeting on August 27, 1998, in which the Town Council took final action regarding Cox. A check was also printed for Cox's vacation pay on October 13, 1998, and was mailed to him at that time.

Cox filed his complaint, with six counts, seeking damages on September 16, 1998. Rome City moved for summary judgment upon all six counts, and Cox filed a cross motion for summary judgment upon Counts I, II, and III. The trial court granted summary judgment in favor of Rome City.

When reviewing a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court. *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 914–15 (Ind.Ct. App.2001). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Arnold*, 745 N.E.2d at 915. A genuine issue of material fact exists when there is a dispute, or when undisputed facts are capable of supporting conflicting inferences, about

---

1. We direct both parties' attention to the appropriate appellate rules concerning appendices. We note that Indiana Appellate Rule 50(A)(2)(f) requires the Appellant's Appendix to contain the pleadings and other documents that are necessary for the resolution of the issues raised on appeal, regardless of which party designated them as evidence before the trial court. We also direct Rome City to Indiana Appellate Rule 51, which controls the form and assembly of appendices and point out that on several pages in the Appellee's Appendix, page numbers and text were cut off in copying.

an issue which would dispose of the litigation. *Indiana Heart Assocs., P.C. v. Bahamonde*, 714 N.E.2d 309, 311 (Ind.Ct. App.1999), *trans. denied.* Once the moving party demonstrates, prima facie, that there is no genuine issue of material fact as to any determinative issue, the non-moving party must come forward with contrary evidence. *Sullivan v. City of Evansville*, 728 N.E.2d 182, 187 (Ind.Ct.App. 2000). Upon appeal, we do not weigh the evidence, but rather we consider the facts in the light most favorable to the non-moving party. *Arnold*, 745 N.E.2d at 915. We may sustain the judgment upon any theory supported by the designated evidence. *Id.* "Cross motions for summary judgment do not alter our standard of review." *Sullivan*, 728 N.E.2d at 187.

### I

#### Controlling Law

Cox asserts that his claim for relief is properly controlled by the employment contract entered into between himself and Rome City. If so, his action would fall under general contract law, and he could pursue an award for breach of contract against Rome City for not following the bargained for disciplinary procedure. Rome City responds that the trial court had no jurisdiction over Cox's claims because he did not first avail himself of the mandatory statutory remedies under Indiana Code § 36–8–3–4 (Burns Code Ed. Repl.1995).

 The primary purpose in contract construction is to ascertain and give effect to the mutual intent of the parties. *Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct.App.2001). Upon review of a written contract, the language used in the contract determines the intent of the parties at the time the contract was written. *Hollars v. Randall*, 554 N.E.2d 1177, 1179 (Ind.Ct. App.1990). The words in the contract are to be given their common and ordinary meaning. *Id.*

In the Town Marshal Employment Agreement, the language used by the parties in the section concerning disciplinary actions reads, "Improper use of police vehicles and conduct unbecoming an officer shall, *be subject to Indiana laws for termination of Town Marshals or police officers* . . . ." Appellant's App. at 13 (emphasis supplied). The subsequent section in the contract discusses termination, and lists six grounds upon which the contract shall be immediately terminated. Included in that list are, "[i]f the employer and employee mutually agree in writing to termination," and "[i]nsubordination, misconduct, disloyalty or for such acts committed by Employee which may be detrimental to the Employer as provided by the laws of Indiana." *Id.* at 14.

While Cox is correct that the employment contract was valid and controlled the disciplinary actions to be taken by the Town Council, his assertion that all actions are taken outside of any statutory requirements is misplaced. The section of the contract dealing with disciplinary actions specifically states that it is *"subject to Indiana laws for termination of Town Marshals."* *Id.* at 13. The logical interpretation is that the parties intended that the procedure for any disciplinary action taken would be subject to Indiana Code § 36–5–7–3 (Burns Code Ed. Repl.2000) and I.C. § 36–8–3–4, the appropriate statutory law regarding the disciplining of town marshals who have served more than six months and have completed minimum basic training requirements.[2] Therefore,

---

**2.** Cox claims that there is a genuine issue of material fact whether he resigned or was fired

by the Town Council, which precluded summary judgment on his claim for breach of

the statutory requirements of I.C. § 36–5–7–3 apply to this case.

Indiana Code § 36–5–7–3 requires that before a town marshal who has served more than six months may be terminated or suspended, the legislative body overseeing the marshal must conduct disciplinary procedures according to I.C. § 36–8–3–4. At the employee's request, a safety board is required to conduct a hearing. I.C. § 36–8–3–4(c). If a decision is rendered which results in suspension of more than five days or dismissal, the employee may appeal the decision to the circuit or superior court of the county. I.C. § 36–8–3–4(e). However, the appeal must be made within thirty days. I.C. § 36–8–3–4(f).

In its Answer to the Complaint, Rome City challenged the jurisdiction of the trial court to hear this case both for lack of subject matter jurisdiction and for Cox's failure to file his complaint within the time limit specified by statute. In essence, when it raised the defense of failure to file within the statutory time limit, Rome City claimed that the trial court did not have jurisdiction of the particular case.

■ As a matter of law, the failure to follow statutory procedures for perfecting appeals results in a jurisdictional defect which precludes judicial review of an administrative adjudication. *Foor v. Town of Hebron*, 742 N.E.2d 545, 549 (Ind.Ct.App. 2001). Subject matter jurisdiction is the power of the court to hear a class of cases and is derived from the constitution or statute. *Id.* at 548; *Farley v. Farley*, 157 Ind.App. 385, 395, 300 N.E.2d 375, 382 (1973), *trans. denied.* Jurisdiction of the particular case is the power of the court to hear a specific case within the class of cases over which the court has subject matter jurisdiction. *Foor*, 742 N.E.2d at 548.

■ It is undisputed that the Town Council held a hearing on May 6, 1998, in which Cox had the opportunity to defend his actions and to call witnesses. However, neither Cox nor his attorney attended the hearing and the Town Council took action against Cox. It is also undisputed that Cox did not seek redress in the courts within thirty days as was mandated by I.C. § 36–8–3–4(f). Instead, Cox filed his complaint on September 16, 1998, more than three months after the statutory deadline.

contract. From a review of the factual record before us, we find no facts which would allow us to make a clear and final determination of whether Cox resigned or was fired. However, this is not a decision that must be made for a determination of the controlling law for this breach of contract claim. In his brief, Cox has specifically made a request for damages arising out of the Town Council's failure to follow the contracted for progressive discipline, i.e. that he should have been suspended without pay rather than terminated. In essence, Cox is making no claim that he resigned, but rather that he was subject to disciplinary dismissal by the Town Council. The effect of his designation of the breach of contract claim is to put this disciplinary action squarely within the requirements of the contract language quoted above, which states that any action by the Town Council is subject to the statutory requirements, and also, that

any appeal by Cox is subject to statutory restraints.

We also note that designation of the action taken by the Town Council as an acceptance of Cox's resignation or as a dismissal of Cox is not necessary for determination with respect to any of the relief sought by Cox, including any suggestion that Rome City breached the contract by dismissing Cox. The employment agreement under which Cox had contracted to serve as Town Marshal provided that the contract would be terminated immediately upon either (1) the employer and employee mutually agreeing in writing to termination or (2) insubordination, misconduct, disloyalty, or for such acts committed by Cox which may have been detrimental to Rome City as provided by the laws of Indiana. Under either ground arguably applicable here, the contract would be terminated.

Because Cox failed to file his claim for review by the trial court within the statutory period of thirty days following the decision of the Town Council, to the extent that Cox is challenging the termination of his employment with Rome City, the trial court lacked jurisdiction of the particular case. Therefore, summary judgment was appropriate for Rome City on any claim challenging his employment termination.

However, I.C. § 36–8–3–4, insofar as pertinent, applies only to the action terminating Cox's employment; it does not prevent any action by Cox seeking compensation owed to him or penalties resulting from the late payment of his wages under Indiana Code § 22–2–5–2 (Burns Code Ed. Repl.1997). *See E & L Rental Equipment, Inc. v. Gifford,* 744 N.E.2d 1007 (Ind.Ct.App.2001) (holding that I.C. § 22–2–5–2 does not require a plaintiff to first exhaust administrative remedies when seeking damages for nonpayment of wages).

## II

### Relief From 1995 Suspension

In 1995, Cox was disciplined for failing to attend Noble County Prosecutor's meetings following a directive by the Town Council President, David Abbott, to do so. For this violation, Cox received a verbal warning. At this time, Cox was also disciplined for failure to record mileage for the use of his police vehicle in his daily log sheet. This violation resulted in a written warning inserted into Cox's personnel file. The third violation, from which Cox is seeking relief, is the improper use of a police vehicle. For this, Cox received a five day suspension without pay. At the

Rome City Town Council Executive Session, held upon the evening in which Cox was suspended for five days, there was discussion about two allegations of improper use of a police vehicle by Cox. The first, which the council agreed that the evidence supported, was that Cox was speeding excessively and passing motorists in an erratic fashion on I–69. The second allegation was in regard to Cox's unauthorized use of his police vehicle for traffic control on Highway 6 in Kendallville on June 2, 1995, from 9 a.m. to 5 p.m., without obtaining prior permission, when he was to be on duty for Rome City at 5 p.m. It is not clear whether the use of the police car on Highway 6 was included in any disciplinary action.

Cox later protested to the Town Council about his five day suspension, presumably because it does not appear to follow the disciplinary procedure set out in the Town Marshal Employment Agreement.[3] Following his complaints, the Town Council reinstated two and one-half days from the 1995 suspension, thereby effectively making the suspension two and one-half days.

Cox asserts that he is owed back pay for the two and one-half days upon which he was suspended. His contention is that no appeal procedure was available to him at the time of the suspension and also that withholding pay violates both I.C. § 22–2–5–2 and his employment contract. Rome City counters that summary judgment was appropriate under Indiana Trial Rule 12(B)(6). In the alternative, Rome City asserts that the trial court did not have subject matter jurisdiction under Trial Rule 12(B)(1).

As previously stated, subject matter jurisdiction encompasses those classes of cases over which the court has power

---

**3.** The Town Marshal Employment Agreement contained in Appellant's Appendix, entered into on January 5, 1998, states that a third violation results in suspension of three days without pay. Presumably, the disciplinary procedures were the same in 1995 as they were in 1998.

and is derived from the constitution or statute. *Foor*, 742 N.E.2d at 548; *Farley*, 157 Ind.App. at 395, 300 N.E.2d at 382. According to I.C. § 36–8–3–4(e), after a disciplinary action is taken by a safety board, the decision may be appealed to the circuit or superior court of the county in which the unit is located if the individual is suspended for more than five days, demoted, or dismissed. However, the statute prevents an appeal of any other disciplinary action of the safety board. I.C. § 36–8–3–4(f). Because the statute limited the court's ability to hear an appeal of minor disciplinary actions, such as the suspension at issue, the trial court appropriately granted summary judgment in favor of Rome City for lack of subject matter jurisdiction with respect to the 1995 suspension.

### III

### *Claim for Unpaid Wages and Attorney's Fees*

Cox also asserts upon appeal that the trial court erred in denying his claim

for unpaid wages, penalties for unpaid wages, and attorney's fees as required by I.C. § 22–2–5–2. Cox specifically requests that he receive the statutorily mandated liquidated damages for all wages received after the appropriate payday, that he be awarded wages that were withheld from his final paycheck for the payment of his insurance for June, and that he receive attorney's fees for the collection of those wages and penalties. Rome City counters with several arguments, which will be addressed as necessary.[4]

### A. *Penalties for Late Payments*

It is undisputed that Cox received payment for his wages and accrued vacation, but at a date after they were due according to statute.[5] Cox challenges the grant of summary judgment in favor of Rome City upon the grounds that he should be awarded damages on the late payments, according to the penalty provision of I.C. § 22–2–5–2 which states "and in any suit so brought recover *said wages or the liqui-*

---

4. Rome City argues upon appeal that it is not subject to the penalty and attorney's fees provisions of I.C. § 22–2–5–2 because it is a governmental entity. However, Rome City did not present the applicability or inapplicability of I.C. § 22–2–5–2 to governmental entities as an affirmative defense before the trial court. Rather, Rome City relied upon a different use of I.C. § 22–2–5–2 in its answer and motion for summary judgment. In its motion for summary judgment, Rome City stated, "all claims for punitive relief under I.C. 22–2–5–2 should be dismissed because the plaintiff failed to comply with the requirements of same by not providing a written demand." Appellant's App. at 1. While we recognize the general policy against assessing penalties and attorney's fees against a governmental entity because they are punitive in nature, we cannot address the applicability of that policy in regard to I.C. § 22–2–5–2 in this case. Any affirmative defense that a party seeks to assert must be included in the pleadings when a responsive pleading is necessary.

Ind. Trial Rule 8(C); *Paint Shuttle, Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 525 (Ind.Ct.App.2000), *trans. denied.* Failure to do so results in waiver, even if the affirmative defense is not listed in those defenses enunciated in Trial Rule 8(C). *Paint Shuttle, Inc.*, 733 N.E.2d at 513.

5. According to statute, wages were to be paid to Cox at the next regular pay day following his termination as Town Marshal. While neither party addresses the proper statutory basis for this, we note that Indiana Code § 22–2–5–1 (Burns Code Ed. Repl.1997) and Indiana Code § 22–2–9–2 (Burns Code Ed. Repl.1997) both are consistent in this respect. We acknowledge this to point out only that I.C. § 22–2–5–1 seems to deal with the situation in which an employee voluntarily leaves employment and I.C. § 22–2–9–2 deals with the situation in which an employee is dismissed. No change in result occurs under either statute in this case.

*dated damages for nonpayment thereof, or both . . . ."* (emphasis supplied).

This court has previously interpreted this language in regard to the identical issue of whether I.C. § 22–2–5–2 requires an award of damages even if the late payments are made before trial. In *Valadez v. R.T. Enterprises, Inc.,* 647 N.E.2d 331 (Ind.Ct.App.1995), this court held that the statutory language allows no exception for late payments, and that an award of liquidated damages is mandatory for the amount of the late payments. *See also Sallee v. Mason,* 714 N.E.2d 757, 764 (Ind. Ct.App.1999), *trans. denied.* In *Indiana Heart Assocs., P.C. v. Bahamonde,* 714 N.E.2d 309 (Ind.Ct.App.1999), *trans. denied,* this court addressed the issue of whether vacation pay was also subject to I.C. § 22–2–5–2. We held that absent an agreement or published policy to the contrary, vacation pay is a wage subject to the requisite statutory liquidated damages for late payment. *Id.* at 311–12.

■ Based upon these previous decisions, we hold that the trial court erred in granting summary judgment in favor of Rome City. Rather, summary judgment should have been entered in favor of Cox. Cox is entitled to the liquidated damages as required by statute. Therefore, we remand to the trial court with instructions to conduct further proceedings to determine the appropriate amount of damages due to Cox for the late payment of his final paycheck and his vacation pay.

*B. Withholding of Insurance Premium*

Cox also challenges the withholding of the June insurance premium from his paycheck. Cox states that Rome City violated Indiana Code § 22–2–6–2 (Burns Code Ed. Supp.2001) in withholding the amount of the premium for Cox's insurance for June from his last paycheck. Cox asserts that he provided no written authorization for Rome City to make that deduction.

Indiana Code § 22–2–6–2(a)(1) provides that for any assignment of wages to be valid, including an assignment for the payment of the premium on an insurance policy, the assignment must be in writing and *signed by the employee personally.* It appears that Rome City relied upon the termination agreement as its basis for withholding the amount of the premium for the insurance from Cox's check. However, there is no evidence that Cox signed any agreement authorizing Rome City to deduct the assignment from his paycheck. While Rome City seems to have made a good faith effort to protect Cox and provide him with the opportunity to continue his insurance, the statute is clear that the assignment of wages must be signed by the employee personally. Here, there was no written assignment signed by Cox. Any claimed assignment was invalid and the amount should have been paid to Cox, not deducted from his paycheck.

■ Because there is no genuine issue of material fact and Cox is entitled to judgment as a matter of law, summary judgment should have been granted in favor of Cox. We remand to the trial court with instructions to enter an appropriate award of damages, including penalties for late payment of wages which were reduced with the insurance premium deduction.

*C. Attorney's Fees*

Cox also argues that the trial court erred in denying his claim for attorney's fees arising out of this action to collect the liquidated damages for the late payment of wages. Cox asserts that attorney's fees must be awarded to the employee upon a showing of a violation of I.C. § 22–2–5–2.

As with the mandatory imposition of liquidated damages for the late payment of wages, this court has held that upon a

showing of a violation of I.C. § 22–2–5–2, entitlement to an award of reasonable attorney's fees is activated. *Fardy v. Physicians Health Rehabilitation Services, Inc.,* 529 N.E.2d 879, 883 (Ind.Ct.App.1988). Rome City disputes the award of attorney's fees by noting that the court in *Fardy* determined that "fairness require[d] that Fardy recover only those fees attributable to the collection of the unpaid wages earned before his resignation." *Id.* Rome City contends that this precludes an award of attorney's fees which are the result of litigation over the collection of only liquidated damages and not the collection of unpaid wages.

However, we cannot agree with Rome City's limited reading of the *Fardy* holding. There, the court held that attorney's fees were recoverable by the employee only for the collection of the unpaid wages (including liquidated damages), and not for other issues in the litigation such as breach of contract and personal liability for corporate debts. This view is supported by our interpretation of I.C. § 22–2–5–2. *See id.*

 "A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute." *Valadez,* 647 N.E.2d at 332. The presumption is that the words in a statute have meaning, and we give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Id.* at 333. I.C. § 22–2–5–2 clearly states, "and in any suit so brought to recover said wages *or the liquidated damages for nonpayment thereof,* or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys." I.C. § 22–2–5–2 (emphasis supplied). There can be no dispute that the legislature intended that the award of attorney's fees be mandatory in

an action to recover only liquidated damages under the statute.

We remand to the trial court with instructions to award to Cox an appropriate amount for attorney's fees, including appellate fees, which are attributable to Cox's recovery of liquidated damages arising out of his claim under I.C. § 22–2–5–2.

## IV

### *Insurance Coverage Under 42 U.S.C. § 300bb*

Cox lastly challenges the trial court's grant of summary judgment in favor of Rome City on his claim that Rome City failed to provide him with continued insurance coverage pursuant to 42 U.S.C. § 300bb. Cox asserts that this statute states that the health plan must provide Cox with the option to continue to receive coverage so long as any other employer which maintained the same type of health plan employed over twenty people during the year. Rome City counters that this is an incorrect reading of the statute and that, because Rome City employed fewer than twenty employees during the year, it is exempt from the continuation of coverage provisions.

From our review of federal case law, we find very few cases which have specifically dealt with 42 U.S.C. § 300bb, which controls continuation coverage requirements for plans maintained by state and local governments. However, we are directed in our interpretation of 42 U.S.C. § 300bb by 26 C.F.R § 54.4980B–2 (2001) to seek guidance from the law controlling 29 U.S.C. § 1000 et seq., which deals with ERISA. 26 C.F.R. § 54.4980B–2(d), page 280, states that while group health plans maintained by state and local governments are excepted from the Consolidated Omnibus Budget Reconciliation Act ("COBRA") in its application to ERISA, such plans are

subject to parallel continuation coverage requirements which were added by CO-BRA to the Public Health Service Act. From our interpretation of this statement and from a reading of the requirements of each separate statute, which are nearly identical in all respects, it is our view that the correct reading of 42 U.S.C. § 300bb provides that state and local governments maintaining group health plans are subject to the same requirements other businesses face under ERISA.

Drawing our attention back to the regulations promulgated by the Internal Revenue Service, we see that small-employer plans are excepted from COBRA. § 54.4980B–2, page 280. Small-employer plans are those maintained by an employer that normally employed fewer than twenty employees during the preceding calendar year. *Id.* In *Krogh v. Chamberlain,* 708 F.Supp. 1235, 1239 (D.Utah 1989), the district court discussed the similar question of whether the small-employer plan exception applied under ERISA. In *Krogh,* the employer had fewer than twenty employees. The court determined that the employer maintained a separate plan from any other employer, even though there were other employers who subscribed to similar plans, and therefore, the employer was exempt from providing continued health-care coverage. *Id.*

■ Nothing in the materials presented in this case indicate other than that, as in *Krogh,* Rome City maintained its own plan and was not part of a plan joined by other employers. Whether any other employer that maintained a similar plan provided by the same insurance company employed twenty or more employees during the preceding year is therefore irrelevant. The only questions to be asked are whether Rome City maintained a separate plan, which it apparently did, and whether Rome City employed fewer than twenty employees, which it did. Because the small-employer exception applied to Rome City, the trial court appropriately granted summary judgment in Rome City's favor as to Cox's claim for damages under 42 U.S.C. § 300bb.

### Conclusion

The employment agreement between Cox and Rome City incorporated the appropriate statutory language controlling the appeal of disciplinary actions taken against a town marshal, thereby precluding any separate action by Cox outside of the statutorily granted remedy for actions taken terminating his employment. The trial court properly granted summary judgment in favor of Rome City on Cox's claim for damages arising from his 1995 suspension. The trial court also appropriately granted summary judgment on Cox's claim that he was entitled to continued insurance coverage under COBRA.

The trial court improperly granted summary judgment in favor of Rome City and against Cox on his claims that he was entitled to wages withheld for an insurance premium, liquidated damages for the late payment of wages, and attorney's fees for the collection of the liquidated damages. Rather, summary judgment should have been granted in favor of Cox.

Based upon the foregoing, we affirm in part, reverse in part, and remand to the trial court for further proceedings not inconsistent with this opinion.

KIRSCH, J., and ROBB, J., concur.